J-S44032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.K.S., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: F.H., Mother | : | No. 2778 EDA 2016 |

Appeal from the Order July 21, 2016
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, No(s): CP-51-AP-0000587-2016;
CP-51-DP-0001111-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: C.A.S., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| APPEAL OF: F.H., Mother | : | No. 2779 EDA 2016 |

Appeal from the Order July 21, 2016
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, No(s): CP-51-AP-0000588-2016;
CP-51-DP-0001112-2013

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JULY 31, 2017**

F.H. ("Mother") appeals from the Orders (collectively "the Termination

Orders") granting the Petitions to terminate her parental rights to her

children, C.A.S., born in August 2012, and N.K.S., born in March 2011

(collectively "the Children"), filed by the Philadelphia Department of Human

Services ("DHS"), and changing the Children's permanency goals from reunification to adoption.[1]  We affirm.

The trial court set forth in its Opinion the relevant factual and procedural history underlying this case, which we adopt as though fully set forth herein.  *See* Trial Court Opinion, 2/27/17, at 1-5.[2]

On July 21, 2016, the trial court entered the Termination Orders involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  Mother filed separate, timely Notices of Appeal from the Termination Orders, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In September 2016, this Court, *sua sponte*,

---

[1] By Orders entered on July 21, 2016, the trial court also involuntarily terminated the parental rights of the Children's biological father, R.S. ("Father"), and changed the Children's permanency goals to adoption. Father did not file an appeal and is not a party to the instant appeal.

[2] Since March 2013, the Children have resided with their pre-adoptive foster parents, Mr. and Mrs. G. (collectively "the foster parents").  Mr. G. (hereinafter "foster parent") testified at the termination hearing held on July 21, 2016 (hereinafter "the termination hearing").  At the termination hearing, DHS presented the testimony of the social worker assigned to the family, Stephanie Blanc (hereinafter "social worker").  Mother testified on her own behalf.

consolidated the appeals.[3]

Mother now presents the following issues for our review:

1. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to establish[,] by clear and convincing evidence, that [Mother] has evidenced a settled purpose of … relinquishing claim to [] [the C]hild[ren,] or has refused or failed to [] perform parental duties[?]

2. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to establish[,] by clear and convincing evidence, that the incapacity, abuse, neglect or refusal of [Mother] cannot or will not be remedied by the parent[?]

3. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to establish[,] by clear and convincing evidence, that 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement continue to exist, and termination would best serve the needs and welfare of [] [the Children?]

4. Did the trial court err in changing [the Children's permanency] goal[s] to adoption and terminating [M]other['s] [] parental rights because [DHS] failed to

_____

[3] We are cognizant of the Pennsylvania Supreme Court's admonishment of this Court in regard to delays in Children's Fast Track cases. **In re T.S.M.**, 71 A.3d 251, 261 n.21 (Pa. 2013) (stating that "[t]he repeated delays in the courts below are not fully explained and are unacceptable. We direct the Superior Court in future cases to ensure that Fast Track cases do not linger, but instead give such cases 'priority in both circulation of and voting on proposed decisions.'" (quoting Superior Court I.O.P. 65.42)). The instant appeals were delayed for panel listing because the trial court sent the certified record to this Court over five months late, after repeated prompts by this Court's staff and President Judge. Further delays ensued due to two requests by DHS for extensions of time to file its appellate brief, which were granted.

establish[,] by clear and convincing evidence, that termination of [Mother's] parental rights would best serve the needs and welfare of [] [the Children?]

Mother's Brief at 2. Since Mother's issues are closely related, we will address them simultaneously.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, [] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re*] *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [] 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As [the Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not

the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court may affirm a trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, we will focus on section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent[,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

- 5 -

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Concerning the requirements of section 2511(a)(1), this Court has stated as follows:

[] Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for [her] conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of M.R.D.*, 128 A.3d 1249, 1261 (Pa. Super. 2015) (*en banc*) (emphasis and ellipses omitted).

Moreover,

[t]he biological relationship of parent and child does not vest in the parents a property right to the custody of the child. Instead, a parent-child relationship is a status, and one in which the state has an interest to protect the best interest of the child. Maintaining a parent-child relationship requires a continued

interest in the child and a genuine effort to maintain communication and association with the child.

A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. This [C]ourt has repeatedly recognized that parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs.

*Id.* at 1261-62 (citations, quotation marks and ellipses omitted).

Mother argues in her first issue that the trial court abused its discretion in finding that the requirements of subsection 2511(a)(1)[4] had been met, since "the trial court failed to consider [Mother's] explanation for her conduct and … [her] post-abandonment contact with the [C]hildren." Mother's Brief at 6; *see also id.* (detailing Mother's reasons for having failed to complete her parenting objectives and case plan goals, including her purported "numerous medical maladies"). Mother contends that "[a]s to [her] post-abandonment contact with the [C]hildren, the record reveals that [Mother] did participate in visits with [the C]hildren and that those visits went well[,]" and "[Mother] made herself available for the [C]hildren's medical or other appointments." *Id.* at 7.

In its Opinion, the trial court addressed Mother's issue, and determined that DHS had presented clear and convincing evidence that

---

[4] Mother's issues numbered two and three concern subsections 2511(a)(2), (5) and (8), which we need not address. *See In re B.L.W.*, *supra*.

termination of Mother's parental rights to the Children was appropriate under subsection 2511(a)(1). *See* Trial Court Opinion, 2/27/17, at 5-6. The trial court's findings are supported by the record, and we agree with its determination that Mother failed to perform her parental duties for a period of at least six months before DHS's filing of the Termination Petitions. Accordingly, we adopt the trial court's recitation as though fully set forth herein, *see id.*, and affirm on this basis as to Mother's first issue, with the following addendum.

Though Mother alleges on appeal that the trial court failed to consider that her medical issues caused her failure to complete her objectives, the record undermines this claim. Mother testified at the termination hearing that she "gave up" on her objective of compliance with drug and alcohol/dual diagnosis treatment. *See* N.T., 7/21/16, at 72; *see also id.* at 72-73 (wherein Mother explained that she gave up because she was depressed, defeated and "felt attacked"). Mother further conceded that she failed to complete parenting classes, not necessarily due to her alleged maladies, but because of her job, "domestic situations at home," and her role as the caretaker of her disabled mother.[5] *Id.* at 74.

Mother also challenges in her first issue the change of the Children's placement goal to adoption in her Statement of Questions Presented.

---

[5] Though we acknowledge that Mother did provide documentation verifying some of her maladies, she did not offer any proof that they were the cause of her failure to complete her objectives.

However, she does not set forth any argument supporting such a claim in her Argument section. Accordingly, this claim is waived. **See In re C.R.**, 113 A.3d 328, 336 (Pa. Super. 2015) (stating that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or otherwise fails to develop the issue, that claim is waived); **see also** Pa.R.A.P. 2119(a) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities).

Next, we review the termination of Mother's parental rights under section 2511(b), which Mother challenges in her fourth issue. Mother argues that the trial court abused its discretion in finding that termination of her parental rights would best serve the needs and welfare of the Children, where "the record reveals that the Children were bonded with [Mother], and that [M]other did visit with [the C]hildren and that those visits went well." Mother's Brief at 12; **see also id.** at 7 (same).

The focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). **See In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the

child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d at 267.

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); *see also In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008) (stating that although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child."). There is no bond worth preserving between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d at 764. It is appropriate to consider a child's bond with his or her foster parent(s). *See In re T.S.M.*, 71 A.3d at 268.

"[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). "[W]e will not toll the well-being and permanency of

[a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

The trial court set forth in its Opinion its reasons for determining that termination of Mother's parental rights was warranted under section 2511(b). *See* Trial Court Opinion, 2/27/17, at 7. As the record supports the trial court's factual findings, and we agree with its determination, we affirm on this basis as to Mother's fourth and final issue. *See id.*; *see also In re K.Z.S.*, 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would have been contrary to the child's best interests, and any bond with the mother would have been fairly attenuated when the child was separated from her, almost constantly, for four years).

Based upon the foregoing, we affirm the Orders terminating Mother's parental rights under section 2511(a)(1) and (b), and changing the Children's permanency goals to adoption.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017