J-S16001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 126 EDA 2021 |

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000103-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: C.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 127 EDA 2021 |

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000164-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: W.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 128 EDA 2021 |

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000103-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: C.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S16001-21

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>APPEAL OF: S.C., MOTHER</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>No. 129 EDA 2021</td></tr>
</table>

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000164-2020

<table>
<tr><td>IN THE INTEREST OF: A.C., A MINOR</td><td>:</td><td>IN THE SUPERIOR COURT OF PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>APPEAL OF: S.C., MOTHER</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>No. 131 EDA 2021</td></tr>
</table>

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000212-2020

<table>
<tr><td>IN THE INTEREST OF: A.C., A MINOR</td><td>:</td><td>IN THE SUPERIOR COURT OF PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>APPEAL OF: S.C., MOTHER</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>No. 132 EDA 2021</td></tr>
</table>

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000212-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

---

[*] Former Justice specially assigned to the Superior Court.

- 2 -

J-S16001-21

MEMORANDUM BY BENDER, P.J.E.:                    Filed: August 12, 2021

S.C. ("Mother") appeals from the December 8, 2020 orders adjudicating W.C. (born in June of 2015), C.C. (born in May of 2016), and A.C. (born in January of 2019) (collectively "Children") as dependent and the victims of child abuse. Mother also appeals from the orders finding aggravated circumstances and directing that no efforts should be made to preserve the family and unify Children with Mother.[1] Following review, we affirm.

In January of 2020, the three Children became known to the Department of Human Services ("DHS") upon receiving a Child Protective Report that A.C. was brought to St. Christopher's Hospital for Children due to a breathing difficulty. Upon examination, A.C. was found to be extremely malnourished and was the size of an infant (about 9 pounds), although he was one year old. It was determined that A.C. suffered from various other medical issues and a failure to thrive, which were the result of neglect and/or abuse. A.C.'s malnourishment was certified as a near fatality. DHS also received reports that A.C.'s brother, C.C., who was three years old, only weighed about 22 pounds. However, A.C.'s other brother, W.C., who was four years old, was morbidly obese, weighing approximately 139 pounds. It was further noted that Mother and Maternal Grandmother had been Children's caregivers, but that they seemed unconcerned about Children's conditions.

_____

[1] These appeals were consolidated by order of this Court on February 10, 2021, because they involve related parties and issues. *See* Pa.R.A.P. 513.

- 3 -

An Order of Protective Custody ("OPC") was obtained for each of the Children, and they were placed in medical foster care homes. During the early months of 2020, various hearings were held relating to each Child separately. By June 18, 2020, the court consolidated the cases and a number of adjudicatory hearings were scheduled. Finally, the contested adjudicatory/child abuse hearing was held on December 8, 2020. Six days prior to the scheduled hearing, Mother and Maternal Grandmother requested that the "in-person" hearing be continued due to Covid-19 issues. The court responded that nothing in the record established that the hearing was to be in-person. Therefore, the court ordered that the hearing was to take place on December 8, as a virtual hearing.

Before any testimony was given on the day of the hearing, Mother and Maternal Grandmother raised various preliminary objections, among them challenges to the failure to hold an in-person hearing and the court's refusal to appoint legal counsel for W.C. Additionally, Mother requested a continuance because her criminal case was pending and she did not have an attorney to represent her in the criminal matter, and thus had no advice as to her Fifth Amendment rights. The court denied Mother's continuation requests and the hearing proceeded. At the hearing, the court heard testimony from Dr. Norrell Atkinson, and DHS social workers, Shaylyn Kreider and Rodney Hill. A.C.'s

Father, T.G., also testified.[2]  Mother and Maternal Grandmother did not testify

or call any witnesses.

In an extensive opinion, the trial court provided the following summary

of the basis for its determination in this case, stating:

> After hearing credible, persuasive testimony from Dr. Atkinson, the child abuse expert witness, and the testimony of the DHS investigator and case worker, this [c]ourt found that the condition of these Children constituted "serious physical neglect," justifying a finding of abuse under 23 Pa.C.S. § 6303 (b.1)(7).[2] The medical evidence was clear and convincing regarding the life-threatening malnourished condition of A.C. and C.C., and the condition of W.C.'s morbid obesity.  The evidence presented by the DHS investigator regarding the condition of [] Children's beds, food, lack of heating, and overall care given by [] Mother and Maternal Grandmother placed these Children in a dangerous situation.
>
>> [2] **23 Pa.C.S.[] [§] 6303 Definitions. (b.1) Child abuse—**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following: (7) Causing serious physical neglect of a child.
>
> This [c]ourt adjudicated the three Children [d]ependent based upon the present inability of the parents, [] Mother and two Fathers, to provide safety.  Further, based on the testimony by the investigator and by A.C.'s Father, T.G., who stated that he had never physically seen or cared for his son in a year, had only seen him virtually, had an ongoing intimate relationship with Mother, and seemed unaware of the seriousness of the condition of his son.  Father, nonetheless, testified he wanted A.C. returned to Mother and stated the allegations against Mother were all wrong. Father believes Mother acted innocently throughout all of this when the facts are overwhelming, not clear and convincing, but overwhelming of neglect.  Specifically, this [c]ourt found A.C.'s

---

[2] The father of C.C. and W.C. had not been located.

Father was not credible and not ready, willing, and able to care for his son.

This [c]ourt was authorized to make a separate finding of child abuse for the three Children under the Child Protective Services Law, which provides that a local child services agency investigating child abuse may institute dependency proceedings in which it petitions for [a] finding of child abuse. 23 Pa.C.S. § 6370(b)(2)(i).[3]

> [3] **23 Pa.C.S.[] § 6370. Voluntary or court-ordered services; findings of child abuse. (b) Initiation of court proceedings.**—(2)(i) If the county agency deems it appropriate in a dependency or delinquency proceeding, including an instance in which the alleged perpetrator has access or poses a threat to a child, the county agency may petition the court under 42 Pa.C.S. Ch. 63 (relating to juvenile matters) for a finding of child abuse.

After finding the three Children dependent, this [c]ourt also found the evidence presented was sufficient to establish that Aggravated Circumstances existed as to all three Children pursuant to 42 Pa.C.S. § 6341(c.1).[4] This finding of the existence of Aggravated Circumstances in this case is used as a basis for determining where to place [] Children. Although a [c]ourt might consider reasonable efforts to return Dependent Children to their family, a finding of Aggravated Circumstances requires the [c]ourt to carefully evaluate whether to follow that course or to prevent such a return. This [c]ourt found the evidence sufficient to grant DHS's request for a finding of Aggravated Circumstances and there be no efforts at reunification.

> [4] **§ 6341. Adjudication-General rule.**—After hearing the evidence on the petition[,] the court shall make and file its findings as to whether the child is a dependent child. **(c) Finding of dependency.**—If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case. **(c.1) Aggravated circumstances.**—If the county agency or the child's

attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

Trial Court Opinion (TCO), 2/24/2021, at 35-37.

Following the issuance of the trial court's orders, dated December 8, 2020, Mother filed appeals, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3] Mother raises the following issues:

1. Did the trial court err and/or abuse its discretion by drawing unfavorable inference(s) from [Mother's] claim of her 5th Amendment privileges and/or decisions not to testify for fear of self-incrimination, and without being appointed Fifth [A]mendment [c]ounsel.

2. Did the trial court err and/or abuse its discretion by making a finding of dependency when the evidence presented was that Mother was already addressing W.C.'s obesity-related health concerns with specialists prior to DHS [and the] court['s] involvement.

3. Did the trial court err and/or abuse its discretion by making a finding of child abuse under the Child Protective Services Law, … 23 Pa.C.S. §§ 6301 – 6385 that was not supported by the record and testimony proffered.

---

[3] Maternal Grandmother has filed separate appeals and is not a party to Mother's appeals presently before this Court. **See** 124, 125, and 130 EDA 2021.

4. Did the trial court err and/or abuse its discretion by finding that aggravated circumstances exist, and further by making a separate finding that no reasonable efforts to preserve the family and reunify the [Children] are to be made, which findings were not supported by the record and testimony proffered.

5. Did the trial court err and/or abuse its discretion by failing to grant [Mother's] oral motion to continue the case despite such a continuance being in the interests of justice.

6. Did the trial court err and/or abuse tis discretion by failing to provide [Mother] with an in-person hearing instead of a virtual hearing thus violating [Mother's] due process rights to fundamental fairness.

7. Did the trial court err and/or abuse its discretion by failing to provide [Mother] with meaningful opportunity to prepare given the uncertainty as to whether the hearing was proceeding in[-]person or virtually until the day prior to the hearing.

8. Did the trial court err and/or abuse its discretion by ordering [the] parties to proceed virtually without first providing [the] parties with an opportunity to conference on how [the] parties' due process interests could be protected by adapting courtroom procedure and logistics to provide for a virtual hearing instead of an in-person hearing.

9. Did the trial court err and/or abuse its discretion by ordering for a virtual hearing to proceed despite the virtual nature of the hearing fundamentally and significantly altering the context of the hearing in potentially outcome-determinate ways.

10. The trial court erred and abused its discretion by failing to appoint separate conflict counsel for child W.C. pursuant to Pa.R.J.C.P. 1128 and *In re Adoption of L.B.M.*, …, 161 A.3d 172 ([Pa.] 2017) and *In re T.S.*, …, 192 A.3d [1080] ([Pa.] 2018).

Mother's brief at 11-13.

Before addressing Mother's issues, we provide an overview of our standard of review and generally what this Court is guided by in addressing dependency cases, especially, when the trial court makes a finding of aggravated circumstances. The Pennsylvania Supreme Court set forth our standard of review in a dependency case as follows:

> "[T]he standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." ***In re R.J.T.***, …, 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

***In the Interest of: L.Z., A Minor Child***, 111 A.3d 1164, 1174 (Pa. 2015).

Section 6302 of the Juvenile Act defines a "dependent child" as:

> A child who:
>
> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302. In ***In re G., T.***, 845 A.2d 870 (Pa. Super. 2004), this Court clarified further the definition of "dependent child," stating:

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotations and citations omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). Additionally, we recognize that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *G., T.*, 845 A.2d at 872. With regard to a dependent child, in *In re D.A.*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*Id.* at 617.

Additionally, the Juvenile Act defines "aggravated circumstances" as including the following circumstances:

> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

42 Pa.C.S. § 6302. The Juvenile Act defines "aggravated physical neglect" as, "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id.* Upon a determination that aggravated circumstances exist, the Juvenile Act at 42 Pa.C.S. § 6341(c.1), includes the information quoted in the trial court's

- 10 -

opinion relating to the disposition of a dependent child. **See** TCO, *supra*. Additionally, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection, and physical, mental, and moral welfare of the child.

In regard to addressing Mother's issues, we note that although Mother lists ten issues in her brief, the argument section of her brief only contains seven sections that do not correspond to the order of the issues listed in her brief, nor do the argument sections relate to all the listed issues. Mother is admonished for her failure to comply with Pa.R.A.P. 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); **Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining that the appeal failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised"). Nevertheless, Mother's violation of Rule 2119(a) does not preclude our review; however, we will address only those claims that she sets forth in her argument section and in the order they are presented.

Mother's first argument section centers on the denial of her request to have the child abuse hearing continued due to concerns about the Covid-19 pandemic. In the alternative, Mother contends that the hearing should have been held in-person rather than virtually, which she claims resulted in her due process rights being violated.

In response to these arguments, the trial court related the following that led up to the scheduling of the virtual hearing:

> Adjudication of these Children was deferred beginning in January 2020, and the cases were continued on 2/06/2020, 2/25/2020, 4/21/2020, 4/29/2020, and on 6/16/2020, [with] the order not[ing] that a hearing would be lengthy and in person. On 7/21/2020, a status hearing was held and there was a lengthy discussion regarding the logistics of having at least 10 parties present for the next hearing and whether to use a different courtroom that was larger and could accommodate more people. The cases were continued to 12/08/2020, for a full day of testimony, [but] the order made no mention of whether it was to be in person or virtual and further stated that all discovery to be passed to all counsel and to the potential expert witness 14 days prior to the next listing.

> On December 3, 2020, this [c]ourt received a letter from Maureen F. Pie, Esq[.], Mother's attorney, requesting [a] continuance of the 12/08/2020 hearing. She noted Angela Ryan, Esq., Maternal Grandmother's attorney; Beverly Muldrow, Esq., Father, T.G.'s attorney; Carlin Saafir, Esq., attorney for Father, A.B.; all joined in the request. Kathleen Knese, Esq., Child Advocate, and Kristina Helmers, Esq., counsel for DHS were not in agreement for a continuance. In her letter, Ms. Pie, outlined the "Safer at Home" restrictions, effective 11/20/2020, which increased restrictions and protective measures for the public in light of the recent increased risk of infection. She noted that Philadelphia recently suspended jury trials until January 2021 due to the recent increase in Coronavirus cases in Philadelphia County. She further noted that Philadelphia was designated as a "high risk" county, with increasing COVID-19 infection rate[s] coupled with the numerous reported cases among our own courthouse

- 12 -

personnel and their families, which indicates that the potential for exposure to the virus is significant. Finally, she noted several members of her household were in high-risk health categories, and she could not risk exposing them or herself. This [c]ourt considered Ms. Pie's written request dated 6 days before the hearing, denied, in part, the request, and ordered the 12/08/2020 hearing to go forward as a [v]irtual [h]earing.

TCO at 38-39 (citations to the record omitted).

The court further explained its ability to make credibility decisions in the context of a virtual hearing, stating:

> At the start of the hearing on 12/08/2020, Mother's counsel stated, "Mother was hampered in this matter by technology because of the virtual [setting,]" stating "there would be a question of being able to read facial expressions of the parties, the lawyers and the Judge." This [c]ourt noted, "that even if at one point the hearing was scheduled as in-person, it was changed on purpose because of the numerous health issues that attend a large in[-]person hearing of this type. I balanced it against my ability—and when you all speak of the ability of the [c]ourt, in all due deference, I'm the only one that can speak to the ability of the [c]ourt to determine credibility issues. And I have continued to hear cases since March. I think I missed maybe eight days. But since then I've heard hearings Tuesday through Thursdays continually since March, and I have had complex abuse cases and I've been able to rule on them and adjudicate them. I do not find any issues with observing the witnesses. But of course, the observation of a witness is just a small part of determining the facts in this matter. The primary issue is what the party says, and the other issues of looking at body language and other things were indicia of credibility. I still have the ability to observe when the person is on the screen. But most importantly, it's the words that they use. It's the language that they use. It's the evidence that they give that I am crediting or not crediting. So, I have the ability to observe. I identified this as a virtual case. I have no doubt that I can determine, from the evidence, whether or not the facts are established. I have had no difficulty in observing the witnesses and taking into consideration those observational aspects of any testimony."

*Id.* at 39-40 (citations to the record omitted).

- 13 -

The trial court further explained that in holding the virtual hearing, it did not violate Mother's due process rights because it was complying with the Pennsylvania Supreme Court's directives issued on March 18, 2020, and on April 1, 2020, and the order entered by the President Judge of the Philadelphia Court of Common Pleas on May 15, 2020. These orders provided that virtual hearings were authorized and encouraged to be held in all districts. *See id.* at 40-41. Moreover, our review reveals that the trial court's explanation addressed Mother's concerns and she does not specifically identify any particulars that impacted the outcome of the hearing, such as specific credibility determinations or problems with the technology. Moreover, the Rules of Juvenile Court Procedure provide for parties and/or witnesses to appear at a proceeding using "advanced communication technology." *See* Pa.R.J.C.P. 1129 A ("The child, guardian, or a witness may appear at a proceeding by utilizing advanced communication technology….").[4] Most importantly, we recognize that:

> Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. Due process is flexible and calls for such procedural protections as the situation demands.

---

[4] "Advanced communication technology is any communication equipment that is used as a link between parties in physically separate locations and includes, but is not limited to, systems proving for two-way simultaneous audio-visual communication, closed circuit television, telephone and facsimile equipment, and electronic mail." Pa.R.J.C.P. 1120 (Definitions).

- 14 -

*In Interest of A.N.P.*, 155 A.3d 55, 66 (Pa. Super. 2017) (citations omitted). Our review reveals that the trial court's credibility findings are supported by competent evidence in the record. *See In Re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Therefore, based on the court's having continued the hearing at least five times, *see* TCO at 38, we conclude that its refusal to continue the hearing again and to hold it virtually was not an abuse of discretion. *Id.* Mother's first argument section has no merit.

The second argument section of Mother's brief rests on her contention that because the court had not appointed legal counsel for W.C., his wishes were not taken into consideration by the court. With reliance on *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), and *In re Adoption of T.M.L.M.*, 184 A.3d 585 (Pa. Super. 2018), both termination of parental rights cases, Mother contends that the record contains no information about what W.C.'s desires were and how he would be affected by the "no reasonable efforts to reunify" determination. Specifically, Mother's brief provides:

> In the lead opinion of … *L.B.M.*, Justice Wecht concluded that a trial court is required to appoint counsel to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. … In a concurring opinion, four members of the Court took a less rigid approach to this issue, essentially finding that a child's guardian *ad litem* may also serve as child's counsel when the dual role does not create a conflict of interest. *L.B.M.*, 161 A.3d at 183–193. Subsequent applications of this case found, therefore, that *L.B.M.* requires that a conflict-of-interest analysis be conducted to determine whether a child's legal interests diverge from the child's best interests. In the event of a conflict, separate counsel must be appointed to represent the child. *See* … *T.M.L.M.*, … (remanding where a five-year old child's preference was

- 15 -

equivocal, and child's counsel had not interviewed the child to determine whether his best interests and legal interests conflicted).

Mother's brief at 17-18. Thus, Mother asserts that both her and W.C.'s rights were violated.

The trial court responded to this contention, stating:

This hearing was a contested adjudicatory hearing, not a contested termination of parental rights hearing, nonetheless, there was no evidence presented of any conflict between … Child's legal and best interests. This four-year-old Child, W.C., had a right to counsel and was represented by Ms. Kathleen Knese, Esq., the Child Advocate. The evidence on the record showed that W.C. was morbidly obese because of the care given to him by Mother and Maternal Grandmother and that put him at risk for various medical conditions. This [c]ourt ruled that W.C. could express his wishes to this [c]ourt, however, he was not entitled to dictate where he should be placed, and [he was] not entitled to separate counsel at the adjudicatory stage of this case.

TCO at 41-42.

Mother does not contend that no one spoke to Child as to his preference, but no evidence appears in the record as to his preference, if he actually had a preference, or if he was able to formulate one. Mother herself could have testified to this fact, but she chose not to testify at all. Since the record does not reveal a conflict as to W.C.'s wishes, there was no need for the appointment of both a GAL and an attorney for W.C. Accordingly, Mother's second argument is without merit.

Mother's third argument concerns her contention that the court incorrectly drew a negative inference due to Mother's not testifying based on her assertion of her Fifth Amendment right to avoid self-incrimination. At the

time of the adjudication hearing, Mother had not yet retained a criminal defense attorney. In its opinion, the trial court explained:

> The parent's position in dependence and neglect proceedings may be subjected to serious deprivation of liberty in losing custody of the children. Parents may not be deprived of their fundamental right to raise their children without being afforded the safeguards of due process of law, including the right to court[-]appointed counsel. Mother was appointed counsel and represented since the commencement of this case in January 2020. This [c]ourt discussed Mother's right to waive her Fifth Amendment privilege and noted that she could do so at any time. Mother's counsel advised her not to speak at the adjudication hearing and to take advantage of that protection. Mother's allegation is gratuitous as there is nothing on the record to support the notion of this [c]ourt[']s drawing [any] unfavorable inference from Mother's silence. The record does reflect that this [c]ourt respected Mother's decision not to speak and[] not[ed] that it would not impact the case other than the fact that the [c]ourt will not hear from her.

*Id.* at 37-38. Again, we conclude that the trial court did not abuse its discretion, and Mother has not persuaded this Court that this argument has any merit.

In Mother's fourth argument, she contends that a court must determine that the perpetrator acted in a knowing, intentional, or reckless manner, citing 23 Pa.C.S. § 6303(c). That section provides:

> (c) Conduct that causes injury or harm to a child or creates a risk of injury or harm to a child shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or recklessly when causing the injury or harm to the child or creating a risk of injury or harm to the child.

*Id.* Essentially, Mother claims that the record does not contain any evidence that concerned Mother's state of mind, *i.e.*, that she acted knowingly,

- 17 -

intentionally or recklessly. Rather, she contends that at most she acted in a negligent manner. In *Interest of T.G.*, 208 A.3d 487 (Pa. Super. 2019), this Court reversed a trial court's decision wherein the lower court refused to find the mother a perpetrator of child abuse of her daughter, who at the age of eight was the size of a three-year-old. The mother argued that she was not reckless in her care of her daughter. We stated:

> [A] person acts recklessly in this context if she consciously disregards a substantial and unjustifiable risk that the serious neglect exists or will result from her conduct. As the statute requires, "[t]he risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S. § 302(b)(3).

*Id.* at 492. We further stated that,

> whether through malfeasance or nonfeasance, the fact persists that [the m]other, the sole person responsible for T.G.'s sustenance, failed to provide T.G. with the necessary nutrition. At a minimum, [the m]other's disregard evinces a "gross deviation from the standard of conduct that a reasonable person would observe in [her] situation." 18 Pa.C.S. § 302(b)(3) (defining recklessness).

*Id.* at 495.

The situation in the case before us is similar. Mother here is attempting to convince us that she was unaware that her actions were detrimental and had a negative impact on the three Children. As did this Court in the *T.G.* case, we conclude that evidence in the record here supports a conclusion that Mother failed to provide Children with proper nutrition, a basic essential of life. This failure "is tantamount to serious physical neglect insofar as it threatened

- 18 -

[Children's] well-being and impaired [their] health and development." **Id.** at 496. We, therefore, conclude that the trial court did not err in determining that Mother acted, at a minimum, in a reckless manner. Mother again fails to convince us that her argument has merit.

Mother's last three arguments concern W.C.'s morbid obesity, which Mother contends was diagnosed prior to DHS's involvement with the family. Therefore, she asserts that because she had already enrolled W.C. in a program at Children's Hospital of Philadelphia (CHOP) to deal with his health problems, the grounds for dependency had not been met. Thus, without grounds to find W.C. dependent, Mother argues that aggravated circumstances and efforts to unify him with Mother cannot be determined.

These last three argument sections of Mother's brief are contained within about two pages of her brief and provide no citations to authority. In fact, the substance of her arguments are repetitious to statements made in prior sections of her brief.

> Generally, appellate briefs are required to conform to the Rules of Appellate Procedure. Pa.R.A.P. 2101. Pennsylvania Rule of Appellate Procedure 2119(a) requires that the argument section of an appellate brief include "citation of authorities as are deemed pertinent." **Id.** at 2119(a). This Court will not consider an argument where an appellant fails to cite to any legal authority or otherwise develop the issue. **Commonwealth v. Johnson**, …, 985 A.2d 915, 924 (Pa. 2009), *cert. denied*, **Johnson v. Pennsylvania**, 562 U.S. 906, … (2010); **see also, e.g., In re Estate of Whitley**, 50 A.3d 203, 209 (Pa. Super. 2012) (stating, "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal[]") (citation omitted), *appeal denied*, …, 69 A.3d 603 (Pa. 2013). Therefore, [the a]ppellant's failure to develop said issue results in waiver. **See id.**

***In re C.R.***, 113 A.3d 328, 335-36 (Pa. Super. 2015) (footnote omitted).  Thus, we are compelled to conclude that Mother's last three argument sections are waived.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/21