J-A05031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STACEY BERGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN WAXMAN | : | No. 1851 EDA 2022 |

Appeal from the Order Entered June 8, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at 2009-27364

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 28, 2023**

Stacey Berger (Appellant) appeals from the order denying the petition for contempt she filed against Jonathan Waxman (Ex-Husband). We affirm in part, vacate in part, and remand with instructions.

Appellant filed a complaint in divorce on September 2, 2009. On October 30, 2013, following "multiple days of hearings," an arbitrator entered an award effecting a 60/40 split of the marital assets in Appellant's favor. Award, 10/30/13, at 1, 6. The arbitrator directed:

> [Ex-]Husband and [Appellant] shall execute a Qualified Domestic Relations Order [] transferring $25,000 from [Ex-]Husband's Vanguard Investment and Individual Retirement Account … to [Appellant's] name. [Ex-]Husband shall retain the balance of his Vanguard Retirement and Individual Retirement Accounts, including the sum withdrawn by him in 2010.

*Id.* at 3-4. The arbitrator directed Ex-Husband to pay Appellant $646,257 "in cash or by certified check […] within ninety (90) days of the date of this Award." *Id.* at 6. The arbitrator further directed Ex-Husband to reimburse Appellant approximately $26,910.47 for shared expenses Appellant had paid, and credited Ex-Husband $50,406.18 for his payment of shared expenses. *Id.* at 14, 16-20.

On June 25, 2014, Appellant filed a petition for special relief to confirm arbitration awards and for contempt and enforcement. On October 14, 2014, the parties entered into a stipulated settlement agreement (Settlement Agreement). Pertinently, the Settlement Agreement provided:

> 4. [Ex-Husband] shall rollover his entire Vanguard retirement account balance to [Appellant]. [Ex-Husband] shall cooperate to achieve the rollover as soon as possible.
>
> * * *
>
> 9.     [Ex-Husband] shall pay [Appellant] $730,025 in settlement of his financial obligations (other than those obligations addressed by the parties' support stipulation that they executed on October 14, 2014) to [Appellant] as follows:
>
>     a.     [Ex-Husband] shall owe [Appellant] 6% interest per annum on the $730,025 commencing retroactively on January 31, 2014.
>
>     b.     [Ex-Husband] will be credited as paying [Appellant] $30,800 toward the outstanding debt as of the date that [Ex-Husband's] entire Vanguard retirement account has been transferred to [Appellant].
>
>     c.     Commencing on the first day of the first month following the entry of the divorce decree, [Ex-Husband] shall pay [Appellant] $4,528 per month toward the outstanding debt and

shall continue making payments in that amount each month due on the first day of each month until November 30, 2015.

d.    Commencing on December 1, 2015, [Ex-Husband's] payments to [Appellant] shall increase to $8,628 per month.  The payments shall be due and payable on the first day of each month and continuing until December 31, 2017.

e.    Commencing on January 1, 2018, payments from [Ex-Husband] to [Appellant] shall increase to $9,921 per month due and payable on the first of each month continuing until June 30, 2018.

f.    Commencing on July 1, 2018, payments from [Ex-Husband] to [Appellant] shall increase to $12,630 per month continuing on the first of each month until the loan is paid in full.

g.    The parties will run an amortization chart after the Vanguard payment is made to determine the duration of the payments (*i.e.* when the debt from [Ex-Husband] to [Appellant] is repaid).

10.    In the event that [Ex-Husband] sells any/all of his business interests (in whole or in part) or his or his business' commercial or personal real estate, any and all proceeds shall first be applied to any and all sums owed to [Appellant] by [Ex-Husband] before [Ex-Husband] shall be entitled to receive the net proceeds (after payment of any taxes due upon the sale and after the satisfaction of any loans required to be repaid as a result of the sale).

11.    Any payments that [Ex-Husband] makes in addition to the monthly payments (including the $30,800 credit from the Vanguard Retirement payment) shall be applied directly toward the outstanding balance due to [Appellant].  The interest due on the debt shall be compounded.

12.    [Ex-Husband] shall maintain life insurance to secure his obligations to [Appellant] and shall name [Appellant] as the sole beneficiary to the policy.  [Ex-Husband] shall name [Appellant] as the owner of the policy; however, he is responsible for any and all payments to maintain the policy in the appropriate amount.

* * *

      16.  This agreement does not supersede the Arbitration Awards but it does resolve the financial payments to be made to [Appellant] and others pursuant to the awards.

Settlement Agreement, 10/14/14, at 2, 4-6. The parties divorced on November 24, 2014.

On March 9, 2016, Appellant filed petitions for special relief and contempt. The trial court thereafter found Ex-Husband in contempt for failing to make two monthly payments to Appellant of $8,628.00 each as provided in the Settlement Agreement. Order, 4/21/16, at 1 (unnumbered). The court ordered Ex-Husband to pay Appellant $17,256.00 on or before April 30, 2016. *Id.*

In 2018, the parties executed a modification of the Settlement Agreement. They reduced Ex-Husband's payment from September 2018 to September 2019, to $8,000 per month, with interest of 8% per annum. Agreement for Modification of Equitable Distribution, 9/7/18.

On November 6, 2019, Appellant filed a petition for contempt and enforcement of the Settlement Agreement. On January 16, 2020, the parties entered into an agreement to reduce Ex-Husband's monthly payments from $12,630.00 to $8,000.00, effective November 1, 2019 through April 30, 2021. The parties reset the interest for this period to 7.5% per annum. Order — Short List, 1/16/20, at 1 (unnumbered).

Appellant filed the instant petition for contempt and enforcement of the

Settlement Agreement on March 4, 2022. Petition for Contempt, 3/4/22, at 1-10. Appellant claimed Ex-Husband owed her $105,428.48 under the Settlement Agreement; she sought payment of that amount, along with strict compliance with various terms of the Settlement Agreement, plus counsel and accountant fees. *Id.* at 9.

Ex-Husband filed an answer and counterclaim on May 19, 2022. Ex-Husband maintained he was current with payments, had paid in advance, and owed no payments until November 2022. Answer and Counterclaim, 5/19/22, at 3 (unnumbered). Ex-Husband also sought counsel and accountant fees. *Id.* at 5 (unnumbered).

On May 25, 2022, the trial court held a hearing at which Appellant, Ex-Husband, and Appellant's accountant, Mary Jo Webb, testified. On June 8, 2022, the trial court issued an order denying Appellant's petition for contempt. Order, 6/8/22, at 1 (unnumbered). The court deemed Ex-Husband's amortization schedule, admitted into evidence at the hearing, to be "true and correct," and directed him to pay Appellant $17,204.54 in satisfaction of all remaining amounts owed under the Settlement Agreement. *Id.* at 1-2 (unnumbered). The court denied both parties' requests for counsel and accountant fees. *Id.* at 2. This timely appeal followed.[1]

Appellant raises four issues on appeal:

---

[1] Appellant and the trial court have complied with Pa.R.A.P. 1925; Ex-Husband has not filed an appellee brief.

1. Whether the trial court erred and committed an abuse of discretion by misapplying the law when it failed to find [Ex-Husband] owed Appellant […] more than $17,204.54 in a manner lacking reason?

2. Whether the trial court erred and abused its discretion when it failed to find [Ex-Husband] in contempt of the court order by failing to make payments after he made a lump sum payment?

3. Whether the trial court erred and abused its discretion in failing to order [Ex-Husband] to provide proof of life insurance on his life naming [Appellant] as the beneficiary in the amount owed for equitable distribution?

4. Whether the trial court erred and committed an abuse of discretion in failing to award [Appellant] counsel fees and accountant fees, including but not limited to her accountant witness fees for the contempt hearing?

Appellant's Brief at viii.

In her first three issues, Appellant challenges the trial court's denial of her contempt petition. Appellant's Brief at 1-17, 19-20. While Appellant initially claims the trial court misapplied the law, *see id.* at viii, her argument is fact-based. *See id.* at 1-17. Appellant argues the trial court erred in accepting Ex-Husband's "flawed amortization schedule[,]" which she contends "starts with the wrong amount owed to [Appellant]." *Id.* at 1, 3. Appellant maintains Ex-Husband's amortization schedule "fail[s] to begin accumulating interest on the proper date," and "stops counting interest as of June 2020[.]" *Id.* at 5, 7. Appellant also complains there is "no support" for Ex-Husband's lump sum payments, which allowed him to take a "payment holiday." *Id.* at 13. Lastly, Appellant asserts "the trial court erred in not ordering [Ex-

- 6 -

Husband] to maintain life insurance in an amount equal to what was owed in equitable distribution[.]" *Id.* at 19.[2]

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a **clear abuse of discretion**. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." ***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 (Pa. Super. 2012) (footnote and citation omitted, emphasis added). "This Court will reverse a trial court's order denying a [ ] contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason." ***MacDougall v. MacDougall***, 49 A.3d 890, 892 (Pa. Super. 2012). Thus, "even where the facts could support an opposite result, ... we must defer to the trial [court] so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion." ***In***

---

[2] Appellant references minimal legal authority.

> The Rules of Appellate Procedure require the argument section of an appellate brief to include "citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion. ***Commonwealth v. Johnson***, ... 985 A.2d 915, 925 (Pa. 2009) ...; ***see also In re C.R.***, ... 113 A.3d 328, 336 (Pa. Super. 2015) ... ("This Court will not consider an argument where an appellant fails to cite to any legal authority or otherwise develop the issue.").

***Lechowicz v. Moser***, 164 A.3d 1271, 1276 (Pa. Super. 2017).

*re Adoption of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012). We defer to the trial court's credibility determinations with respect to witnesses because the court has had the opportunity to observe their demeanor. *Habjan v. Habjan*, 73 A.3d 630, 644 (Pa. Super. 2013).

To sustain a finding of civil contempt, **the complainant must prove** … by a preponderance of the evidence that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. *P.H.D.*, 56 A.3d at 706, n.7 (emphasis added).

Upon review, we conclude the trial court did not abuse its discretion. The trial court explained:

> [T]he court did not find Ex-Husband in contempt because the court did not find [Appellant's] testimony and evidence in this matter to be credible. [Appellant[3]] testified that she did not keep track of any of Ex-Husband's payments to her from the time that Ex-Husband began making payments to her in 2014. [Appellant] testified that she never kept any type of payment ledger or never made notes as she received payments from Ex-Husband. N.T. 5/25/22 at p. 17. [Appellant] testified that she did not maintain copies of the checks that Ex-Husband sent to her since 2014. N.T. 5/25/22 at p. 52. [Appellant's] testimony was replete with evidence of poor accounting.[4] Counsel for [Appellant] asked

---

[3] Appellant testified she is an attorney specializing in family law. N.T., 5/25/22, at 43, 52.

[4] Appellant admitted to omitting payments from Ex-Husband, which resulted in her adjusting the calculations in her contempt petition. N.T., 5/25/22, at 18-19, 43-44, 48-51. On direct examination, Appellant testified Ex-Husband owed her $72,925.10 (rather than the $105,428.48 she claimed in her petition, or the $143,000.00 she claimed in December 2021). *Id.* at 21, 51;

[Appellant,] "If [Ex-Husband] made a payment to you and you received a payment from a friend and maybe a payment from somebody else and they were all deposited the same day, would you be able to tell looking at your bank account statement who paid you what?" [Appellant] replied "No." N.T. 5/25/22 at p. 18. In fact, [Appellant] testified that she only began making notes regarding payments made to her by Ex-Husband on the Friday prior to the May 25, 2022 hearing and only after Ex-Husband provided her with copies of all of the payments that he made to her since 2014.[5] N.T. 5/25/22 at p. 18. [Appellant] also testified that she voluntarily allowed Ex-Husband to adjust the interest rate and payment amounts on several occasions since 2014.

Unlike [Appellant's] testimony[,] which the court did not find to be credible, the court found Ex-Husband's testimony to be highly credible. Ex-Husband testified that he made a large lump sum payment to [Appellant] in July 2020 in the amount of $345,000.00[,] which represented the vast majority of the monies owed to [Appellant] under prior Orders of court and agreements between the parties. Ex-Husband testified that nothing in the language of the prior orders of court or agreements between the parties prohibited Ex-Husband from making lump sum payments to [Appellant]. Ex-Husband testified and presented evidence that the remaining monies owed to [Appellant] by Ex-Husband are $17,204.54. The court ordered Ex-Husband to pay this amount to [Appellant] in its Order of June 8, 2022. With respect to the Vanguard IRA, Ex-Husband testified that he rolled over that IRA to [Appellant] as he was required to do[,] and that the amount of that IRA was $30,800.00.

Finally, the court's review of the testimony and evidence presented at the May 25, 2022 hearing indicates [Appellant] and her counsel made little effort to resolve this case. [Appellant] testified at the hearing that she believed that Ex-Husband should

---

Petition for Contempt, 3/4/22, at 9. On cross examination, Appellant admitted to another "discrepancy" she discovered the morning of the hearing, which further decreased the amount to $70,925.10. Id. at 49.

[5] When asked on cross-examination why she did not attempt to obtain copies of the deposited checks from her bank, Appellant stated that Ex-Husband "needs to prove what he paid me." N.T., 5/25/22, at 53.

have been making continuous monthly payments to her[;] however, [Appellant] waited fifteen (15) months since the date of Ex-Husband's last payment to [Appellant] in July 2020 to raise any alleged non-payment issues to Ex-Husband and subsequently to the court. It appeared to the court [Appellant] was attempting to turn her own poor accounting of payments made to her by Ex-Husband into a financial windfall for herself as [Appellant's] amortization schedules stated that Ex-Husband still owed [Appellant] in the range of $70,000.00 to $143,000.00 rather than the $17,204.54 that the court found Ex-Husband still owed to [Appellant] based upon a review of the testimony and evidence presented. With regard to the amortization schedule prepared by [Appellant's] accountant, Mary Jo Webb, as counsel for Ex-Husband stated, the amortization schedule that Ms. Webb prepared on [Appellant's] behalf was constructed by using a web-based program and therefore could have been completed by a layperson with access to the internet and not necessarily by someone with an accounting background. N.T. 5/25/22 at p. 13. Ms. Webb testified that the amortization schedule that she prepared on [Appellant's] behalf was completed with speculative information provided to Ms. Webb by [Appellant] and that Ms. Webb did not independently verify the financial data [Appellant] provided to Ms. Webb. N.T. 5/25/22 at p. 7. Therefore, the court did not err in failing to apply the amortization schedule prepared for [Appellant] by Ms. Webb.[6]

* * *

Here, Ex-Husband testified on direct examination that in July[] 2020[,] he provided [Appellant] with proof of life insurance via e-mail as he was required to do pursuant to paragraph twelve

---

[6] Appellant attached "updated amortization schedules" to her brief. Appellant's Brief at 9; *id.* at Appendix D. This Court has held repeatedly that copying material and attaching it to a brief does not make it part of the record. *See First Union Nat. Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719, 724 n.3 (Pa. Super. 2002); *In re M.T.*, 607 A.2d 271, 275 (Pa. Super. 1992). Our review "is limited to those facts which are contained in the certified record," and evidence not contained in the record "does not exist for purposes of our review." *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa. Super. 2006). Therefore, we may not consider the "updated amortization schedules" attached to Appellant's Brief.

(12) of the parties[' Settlement Agreement]. Paragraph twelve (12) of the [Settlement Agreement] states that Ex-Husband is to pay for and maintain life insurance to secure his financial obligation to [Appellant] and he shall name [Appellant] as the sole beneficiary to the policy. The [Settlement Agreement] states that Ex-Husband is responsible for any and all payments to maintain the life insurance policy in the "appropriate amount." Ex-Husband testified that he maintained and provided proof to [Appellant] of the life insurance in accordance with the above terms through July, 2020, when Ex-Husband made a lump sum payment to [Appellant] in the amount of $345,000, satisfying the vast majority of his financial obligation to [Appellant] under prior orders of court and agreements of the parties. N.T. 5/25/22 at p. 87. In addition, Ex-Husband testified that until [the parties] appeared in court on May 25, 2022, [Appellant] had not asked Ex-Husband for ongoing proof of life insurance since the proof that he provided to [Appellant] in July, 2020.[7] N.T. 5/25/22 at p. 87.

Trial Court Opinion, 9/14/22, at 5-8 (footnotes added).

The record supports the trial court's findings with one exception. The trial court did not determine whether Ex-Husband paid the proper amount of interest to Appellant. As noted, the interest rate varied and compounded. After thoroughly reviewing the record, we are unable to ascertain whether Appellant is owed additional interest. Accordingly, we vacate the award of $17,204.54 and remand with instructions for a determination of whether Appellant is owed additional interest. We otherwise discern no abuse of discretion in the trial court's determination that Ex-Husband was not in contempt of the parties' Settlement Agreement.

---

[7] Appellant conceded Ex-Husband had previously showed her proof of the life insurance policy, but claimed she did not know if he continued to maintain the policy. N.T., 5/25/22, at 37.

Finally, Appellant assails the trial court's denial of her request for counsel and accountant fees. Appellant's Brief at 17-19. We likewise review this decision for an abuse of discretion. ***Miller v. Miller***, 983 A.2d 736, 743 (Pa. Super. 2009). The Divorce Code authorizes an award of counsel fees and costs **when a party has failed to comply with an order of equitable distribution** to effect compliance. 23 Pa.C.S.A. § 3502(e)(7). Here, the trial court found Ex-Husband complied with the Settlement Agreement. Accordingly, the court did not abuse its discretion in declining to award counsel and accountant fees.

For the above reasons, we grant Appellant relief limited to her claim regarding amortization and interest. Therefore, we vacate the award of $17,204.54, and remand solely for the appointment of a special master, with expertise in accounting, to review solely **Ex-Husband's amortization schedules**, as well as the October 30, 2013 arbitration award, the October 14, 2014 Settlement Agreement, the April 21, 2016 Order, the September 7, 2018 Agreement for Modification of Equitable Distribution, and the January 16, 2020 Order — Short List, to determine whether Appellant is owed additional interest, and if so, the amount. The cost of the special master shall be split equally between the parties. At the conclusion of review, the special master shall submit a report and recommendation to the trial court. Each party shall have the right to file exceptions, and the trial court shall enter a

final order on the matter. In all other respects, we affirm the order of June 8, 2022.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023