J-S70029-14
J-S70030-14

2015 PA Super 67

| IN THE INTEREST OF: C.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.R., A MINOR | |
| | No. 1166 EDA 2014 |

Appeal from the Dispositional Order February 10, 2014
In the Court of Common Pleas of Monroe County
Juvenile Division at No(s): CP-45-JV-0000016-2013

| IN THE INTEREST OF: C.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.R., A MINOR | |
| | No. 1586 EDA 2014 |

Appeal from the Dispositional Order April 23, 2014
In the Court of Common Pleas of Monroe County
Juvenile Division at No(s): CP-45-JV-0000016

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

OPINION BY MUNDY, J.:                          **FILED APRIL 06, 2015**

Appellant, C.R., a minor, appeals from the February 10, 2014 dispositional order entered following his adjudication of delinquency for

---

[*] Retired Senior Judge assigned to the Superior Court.

involuntary deviate sexual intercourse with a person who suffers from a mental disability, indecent exposure, and open lewdness,[1] and his commitment to Diversified Treatment Alternatives (DTA) juvenile facility. Additionally, Appellant appeals from the juvenile court's subsequent April 23, 2014 order granting the Commonwealth's petition for re-disposition and placing Appellant in the Mathom House juvenile facility after Appellant was denied admission into DTA.[2] After careful review, we affirm.

The juvenile court has summarized the relevant factual and procedural history of this case as follows.

> An adjudication hearing was held on December 19, 2013, where D.D., a minor victim, D.D.'s father and Trooper Nicholas De La Iglesia testified. The facts elicited at the hearing are as follows[.] In December 2012, [Appellant] was 12 years old and D.D., the victim, was 9 years old. After a complaint was lodged, Trooper De La Iglesia conducted an investigation of an alleged sexual assault on a school bus in December 2012. Trooper De La Iglesia went to the home of [Appellant], where his mother was present. Trooper De La Igelesia read [Appellant] his Miranda Rights after which [Appellant] and his mother waived those rights and agreed to speak to Trooper De La Iglesia. During the interview, [Appellant] admitted that he pulled down his pants on the school bus and told D.D. to "suck it." [Appellant] stated that D.D. performed oral sex on

---

[1] 18 Pa.C.S.A. §§ 3123(a)(5), 3127(a), and 5901, respectively.

[2] This Court has *sua sponte* consolidated Appellant's appeals as the outcome of Appellant's appeal at 1166 EDA 2014 necessarily implicates our jurisdiction to review Appellant's claims at 1568 EDA 2014. **See generally** Pa.R.A.P. 513.

him on two separate occasions three weeks prior to that day. [Appellant] also related that he knew D.D. was mentally challenged.

D.D. also testified at the adjudication hearing. D.D. was permitted to testify by contemporaneous alternative methods after an in-camera-hearing. D.D. stated that he sits next to [Appellant] on the school bus. While on the bus, [Appellant], "sucked his weewee" and then [Appellant] asked him to "suck his weewee," but he refused. D.D. then stated that he touched [Appellant]'s "weewee" with his hand. In addition, D.D.'s father testified about his son's mental limitations. D.D.'s father stated that D.D. is mentally disabled and that D.D. was diagnosed with autism, bipolar disorder and oppositional defiance. D.D. has an Individual Educational Plan (IEP) at Pleasant Valley School District and he rides to school on a regular scheduled bus with other children.

At the end of the [December 19, 2013] hearing, [the juvenile court] adjudicated [Appellant] delinquent for the acts of Involuntary Deviate Sexual Intercourse (F-1); Indecent Exposure (M-1); and Open Lewdness (M-2).

Juvenile Court Opinion, 5/14/14, at 1-2.[3]

Following a disposition hearing on February 10, 2014, the juvenile court ordered Appellant placed in the custody of Monroe County Children & Youth Agency (CYA) for placement at DTA. Juvenile Court Order, 2/12/14, at 1. On February 18, 2014, Appellant filed a timely post-disposition motion pursuant to Pennsylvania Rule of Juvenile Court Procedure 620(B)(1). On

---

[3] The Juvenile Court's opinion does not contain pagination. For ease of review, we have assigned each page a corresponding number.

March 20, 2014, the juvenile court denied Appellant's post-disposition motion and filed an opinion in support of said decision.

On April 3, 2014, the Commonwealth filed an "Expedited Motion for Re-Disposition[.]"[4]  In said motion, the Commonwealth asserted that "[o]n March 31, 2014, [Appellant] along with his parents, visited DTA as scheduled[,]" and that after meeting with the program supervisor and touring the facility, "[Appellant] and his parents were obstinate and wholly uncooperative with the treatment process."  Commonwealth's Expedited Motion for Re-Disposition, 4/3/14, at ¶¶ 3-5.  As a result, the DTA program supervisor informed the Commonwealth that he felt "[Appellant]'s placement with DTA would be detrimental to other juveniles at the facility and unsuccessful for [Appellant] himself, and therefore rescinded DTA's offer of admission."  *Id.* at ¶ 6.  The Commonwealth requested a re-disposition hearing be scheduled to address the matter.  *Id.* at ¶ 8.  A hearing was held on April 23, 2014, and on April 24, 2014, the juvenile court granted the Commonwealth's petition for re-disposition, and ordered that Appellant be placed in the custody of Monroe County CYA and placed at the Mathom House.  Juvenile Court Order, 4/24/14, at 1.

While the re-disposition motion was pending, on April 10, 2014, Appellant filed a timely notice of appeal from the December 19, 2013

---

[4] The Commonwealth's motion was filed pursuant to Pa.R.J.C.P. 610.

adjudication of delinquency and the juvenile court's subsequent February 10, 2014 dispositional order. On April 11, 2014, Appellant was directed to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On April 23, 2014, Appellant timely complied, and on May 14, 2014, the juvenile court issued its Rule 1925(a) opinion.

Thereafter, on May 20, 2014, Appellant filed a second notice of appeal from the juvenile court's April 23, 2014 order granting the Commonwealth's motion for re-disposition. On May 22, 2014, the juvenile court adopted its May 14, 2014 Rule 1925(a) opinion for purposes of Appellant's appeal at docket number 1166 EDA 2014.[5]

On appeal, Appellant raises the following issues for our review.

> [1.] Did the [juvenile] court violate Rule 1701 of the Pennsylvania Rules of Appellate Procedure when it granted the Commonwealth's petition for re-disposition after … Appellant had already filed a notice of appeal to the Superior Court of Pennsylvania?

Appellant's Brief (1166 EDA 2014) at 7.

> [2.] Where the testimony presented in the contested hearing established that … Appellant and Victim, both of whom are incapable of consenting to sexual

---

[5] We note that no portion of the juvenile court's May 14, 2014 Rule 1925(a) opinion addresses the issue Appellant raised in his appeal at docket number 1166 EDA 2014. Additionally, the Commonwealth has filed one brief under both docket numbers, however, the Commonwealth has also failed to address Appellant's sole issue raised at docket number 1166 EDA 2014.

activity as a result of their age, willingly took part in sexual experimentation, was the decision of the [juvenile] court to find only … Appellant delinquent of crimes stemming from those acts against the weight of the evidence, based upon insufficient evidence and contrary to the law?

[3.] At the time of the disposition, did the [juvenile] court fail to adequately state upon the record reasons sufficient to justify placing … Appellant in a juvenile rehabilitation facility?

Appellant's Brief (1586 EDA 2014) at 7.

We begin by addressing Appellant's appeal at 1166 EDA 2014, asserting that the juvenile court violated Pennsylvania Rule of Appellate Procedure 1701 by granting the Commonwealth's motion for re-disposition. Appellant's Brief (1166 EDA 2014) at 12.  Specifically, Appellant asserts that the juvenile court "altered the disposition [of the February 10, 2014 order] by changing the location of placement after … Appellant had already filed an appeal." *Id.*

Rule 1701, in pertinent part, states the following.

**Rule 1701. Effect of Appeal Generally**

**(a) General rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

**(b) Authority of a trial court or agency after appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

> (1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.
>
> (2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.
>
> …

Pa.R.A.P. 1701.

In his brief, Appellant argues that Rule 1701(a) "authorizes the trial court to take action necessary to preserve the status quo," but that "[t]hese exceptions do not permit the trial court to make any substantive modifications to any order which is the subject of this appeal." Appellant's Brief (1166 EDA 2014) at 12. However, pursuant to Rule 610, the juvenile court may conduct a dispositional review hearing at any time. Specifically, Rule 610 states, in pertinent part, as follows.

> **Rule 610. Dispositional and Commitment Review**
>
> **A. Dispositional Review Hearing.** The court shall review its disposition and conduct dispositional review hearings for the purpose of ensuring that the juvenile is receiving necessary treatment and services and that the terms and conditions of the disposition are being met.

(1) In all cases, the court shall conduct dispositional review hearings at least every six months.

(2) In all cases, the juvenile shall appear in person at least once a year.

(3) The court may schedule a review hearing at any time.

**B. Change in dispositional order.** Whenever there is a request for a change in the dispositional order, other than a motion to revoke probation as provided in Rule 612, notice and an opportunity to be heard shall be given to the parties and the victim.

(1) The juvenile may be detained pending a court hearing.

(2) A detention hearing shall be held within seventy-two hours of the juvenile's detention, if detained.

(3) The juvenile shall be given a statement of reasons for the discharge from a placement facility or request for change in the dispositional order.

(4) A review hearing shall be held within twenty days of the discharge from the placement facility or request for change in the dispositional order.

….

Pa.R.J.C.P. 610.

Accordingly, upon receipt of the Commonwealth's motion for redisposition, the juvenile court scheduled a hearing to evaluate if the

disposition was still serving the interest of Appellant and the protection of society.[6] The juvenile court had both the authority and obligation, under Rule 610, to ensure that Appellant was "receiving necessary treatment and services and that the terms and conditions of the disposition are being met[.]" Further, Appellant's pending appeal would not divest the juvenile court of its reviewing authority, as it is required to continually evaluate events and circumstances that occur after the original disposition. Appellant filed his notice of appeal on April 10, 2014, after the parties had been made aware that DTA had rescinded its invitation, and after the Commonwealth had filed a petition for re-disposition as the juvenile court's February 10, 2014 order could no longer be enforced as entered. Instantly, the terms of the disposition could not be met because DTA had rescinded Appellant's invitation; therefore, the juvenile court properly entered a new dispositional order pursuant to Rule 610 directing Appellant be placed in Mathom House. As a result, Appellant's first issue fails.

We turn now to Appellant's two remaining issues in his appeal docketed at 1586 EDA 2014. In his second issue, Appellant argues that the evidence was insufficient because both Appellant and the victim are incapable of consenting; therefore, they are equally incapable of being held

---

[6] We note that the record does not contain a copy of the April 23, 2014 re-disposition hearing. It is the responsibility of Appellant to ensure all necessary transcripts are included in the certified record. **See generally** Pa.R.A.P. 1911(a).

criminally liable. Appellant's Brief (1586 EDA 2014) at 13-14. Appellant further asserts that the verdict was against the weight of the evidence for the same reason. *Id.* at 15-16. For the reasons that follow, we conclude that both of Appellant's arguments raised in his second issue lack merit.

"In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, ***Patterson v. Pennsylvania***, 2015 WL 731963 (U.S. 2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" ***Id.*** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." ***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted), *appeal denied*, 101 A.3d 102 (Pa. 2014). "Because

evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied*, **Diamond v. Pennsylvania**, 135 S. Ct. 145 (2014).

Instantly, Appellant challenges his convictions for involuntary deviate sexual intercourse with a person who suffers from a mental disability, indecent exposure, and open lewdness, the respective statutes for which provide, in relevant part, as follows.

### § 3123. Involuntary deviate sexual intercourse

**(a) Offense defined.--**A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

…

(5) who suffers from a mental disability which renders him or her incapable of consent; or

18 Pa.C.S.A. § 3123(a)(5).

### § 3127. Indecent exposure

**(a) Offense defined.--**A person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm.

*Id.* § 3127(a).

### § 5901. Open lewdness

A person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be

> observed by others who would be affronted or alarmed.

*Id.* § 5901.

In reviewing the sufficiency of the evidence regarding the aforementioned statutes, we note that Appellant solely argues that the Commonwealth failed to provide "testimony or evidence indicating that [the] victim was somehow forced to take part in these acts with [Appellant] or even that he did not want to engage in these acts." Appellant's Brief at 13. Accordingly, the only element Appellant challenges on appeal is consent.

Relying on the case of *In the Interest of B.A.M.*, 806 A.2d 893 (Pa. Super. 2002), Appellant asserts that while the statutes do not exclude "from criminal liability a child less than 13 years of age who engages in sexual activity with another child less than 13, such a result would be absurd because children younger than 13 are deemed by the legislature to be incapable of consenting to (or initiating) sexual activity." Appellant's Brief (1586 EDA 2014) at 14. First, we specifically disagree with Appellant's interpretation of *B.A.M.* We note that *B.A.M.* does not hold that a 13-year-old cannot be held criminally liable for **initiating** sexual activity; rather, it held that one child could not be held criminally liable for the acts of two 11-year-olds who consensually engaged in the conduct. *Id.* at 897. Further, in *B.A.M.*, the record evidence supported that the act between the two minors was consensual based on the victim's testimony at trial. *Id.* at 898 (holding "[i]t is therefore absurd to penalize one youngster while the other faces no

sanction for precisely the same behavior. Either both boys must be punished

… or neither can be; as the trial court definitively found, both boys were

willingly participants").   This Court therefore concluded that the juvenile

could not be held criminally liable for IDSI with a child under what is now

Section 3123(b) or rape under what is presently Section 3121(c).

Further, a decade after **B.A.M.** was decided, this Court clarified our

intended holding.

> We acknowledge that our use of the term "consensual" in **In re B.A.M.** can be confusing and may appear to be in conflict.  Specifically, in **In re B.A.M.** we held that "[t]here can be no legitimate interest in prosecuting consensual sexual activity between two children under 13," but then go on to state that children under the age of 13 are incapable of consent.  Appellant seeks to exploit that conflict, while turning the intent of our holding in **In re B.A.M.** on its head.   According to Appellant's interpretation, any sexual activity between children under the age of 13 is not a crime.  Applying Appellant's interpretation of **In re B.A.M.** to other scenarios, he would have that case determine that, regardless of the level of forcible compulsion used, a child under the age of 13 is incapable of rape.  Such a dangerous result was certainly not our intent and is not supported by **In re B.A.M.**
>
> To the contrary, we rendered the decision in **In re B.A.M.** to protect children while avoiding absurdities in application of our Legislature's statutes.  The entire basis of our holding in **In re B.A.M.** and the cases relied upon in reaching that decision focused on the fact that "the statutes before us are deliberately protective, specifically intended by the Legislature to shield young children from sexual predation by older teenagers and adults." **Id.** at 895. As was expressly noted by this Court in **In re B.A.M.** "[o]ur appellate courts have stated

- 13 -

> **definitively** that **those enactments were designed to protect children from exploitation by their elders.**" *Id.* at 897 (emphasis added). Were we to have worded our holding in *In re B.A.M.* more precisely, we would have strictly limited the holding to its facts wherein mutually agreed upon sexual activity between peers under the age of 13 is not a crime. ….

*Commonwealth v. Bricker*, 41 A.3d 872, 879-880 (Pa. Super. 2012) (citation omitted).

Instantly, a review of the transcripts reveals that D.D., the victim in this case is a nine-year-old boy who "has mental retardation and he also has a degree of autism. He's also bipolar and [has] oppositional defiance." N.T., 12/19/13, at 28. D.D. was riding the bus to school when twelve-year-old Appellant "pulled his own pants down and told [D.D.] to suck it." *Id.* at 35. Appellant told police that he had wanted oral sex and asked D.D. to perform it on him. *Id.* at 35, 37. Pursuant to Section 3123(a)(5), a person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant who "suffers from a mental disability which renders him or her incapable of consent[.]" 18 Pa.C.S.A. § 3123(a)(5). This is precisely the conduct distinguished by the *Bricker* Court and specifically found to be beyond the scope of our holding in *B.A.M.* We continue to decline the invitation to extend *B.A.M.* Accordingly, we conclude that Appellant's assertion that the Commonwealth failed to show the acts were not consensual, and that Appellant was incapable of criminal liability based on his age, must fail.

Appellant also asserts that the finding of the juvenile court "shocks one's sense of justice, and was therefore against the weight of the evidence." Appellant's Brief (1586 EDA 2014) at 16. However, Appellant devotes a mere two paragraphs to this argument without developing his claim whatsoever. *See id.* Further, the entire basis of Appellant's argument contained in the two paragraphs is a reiteration of his sufficiency argument relying on ***B.A.M.*** Generally, appellate briefs are required to conform to the Rules of Appellate Procedure. Pa.R.A.P. 2101. Pennsylvania Rule of Appellate Procedure 2119(a) requires that the argument section of an appellate brief include "citation of authorities as are deemed pertinent." ***Id.*** at 2119(a). This Court will not consider an argument where an appellant fails to cite to any legal authority or otherwise develop the issue. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009), *cert. denied*, ***Johnson v. Pennsylvania***, 131 S. Ct. 250 (2010); ***see also, e.g.***, ***In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012) (stating, "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal[]") (citation omitted), *appeal denied*, 69 A.3d 603 (Pa. 2013). Therefore, Appellant's failure to develop said issue results in waiver.[7] ***See id.***

---

[7] Even if we were to address Appellant's claim, we would conclude the verdict was not against the weight of the evidence. An argument that the jury's verdict was against the weight of the evidence concedes that the evidence was sufficient to sustain the convictions. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, ***Lyons v.***
*(Footnote Continued Next Page)*

- 15 -

Finally, in his last issue Appellant asserts that the juvenile court "failed to adequately set forth reasons why [] Appellant's placement was the least restrictive alternative available." Appellant's Brief (1586 EDA 2014). Specifically, Appellant asserts that "the record does not demonstrate that [the juvenile court] weighed and considered any less restrictive forms of rehabilitation as required by [Pennsylvania] Rule [of Juvenile Court Procedure] 512D." *Id.* at 18.

_(Footnote Continued)_ ————————

***Pennsylvania***, 134 S. Ct. 1792 (2014). Our Supreme Court has admonished that "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). Instead, "the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (internal quotation marks and citation omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice …." *Id.*

As an appellate court, it "is not [our role] to consider the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence remains "[o]ne of the least assailable reasons for granting … a new trial …." *Id.* (citation omitted). "Thus, only where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." *Id.* (citation omitted; emphasis in original).

Instantly, the evidence adduced at trial showed that Appellant, a 12-year-old, committed conduct in the presence of D.D., a 9-year-old victim incapable of consent, sufficient to convict him of involuntary deviate sexual intercourse with a person who suffers from a mental disability, indecent exposure, and open lewdness. The cumulative testimony of the witnesses at trial corroborated D.D.'s allegations, and the trial court was free to believe the testimony of the witnesses. ***See Clay***, ***supra***.

- 16 -

Rule 512 states the following.

**Rule 512. Dispositional Hearing**

…

**D. Court's findings.** The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515. On the record in open court, the court shall state:

(1) its disposition;

(2) the reasons for its disposition;

(3) the terms, conditions, and limitations of the disposition; and

(4) if the juvenile is removed from the home:

> (a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile, and

> (b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of-home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare;

Pa.R.J.C.P. 512(D).

A review of the dispositional hearing reveals the juvenile court considered all the factors listed in Rule 512(D) and that it found the least

restrictive option to be sentencing Appellant to DTA.[8]  At sentencing the

juvenile court made the following findings.

> These cases, juvenile cases, in general, are
> difficult.  Dealing with juveniles that are as young as
> [Appellant] is, he's - - I recognize he's only 13 years
> old, he's a very young man.  And any time the
> [juvenile c]ourt is faced with the prospect of taking a
> young juvenile, or any juvenile for that matter, out
> of the home, that decision is not taken lightly.  And I
> gave a lot of thought in this case.  And I have some
> concerns about [Appellant]'s behavior in this
> particular incident for a young man.  And the fact
> that he's clearly had problems at the Pleasant Valley
> School District.  According to the social summary
> report that I have reviewed, he had a history of 37
> disciplinary infractions ranging from disrespectful to
> physical confrontations.  And that record essentially
> culminated with this incident, which again, I
> indicated is disturbing.  The young victim in this case
> was only nine years old, a special needs student by
> all accounts.  That [Appellant] essentially took
> advantage of him in a serious manner.  And then as
> a result of that, he's expelled or suspended from
> school.  He's enrolled at Pius and apparently the
> nature of his expulsion from Pleasant Valley was
> made known to Pius at the time.  But he enrolled in
> Pius and he's been engaged in some counseling.  I
> certainly recognize that.  It sounds like he's doing,
> academically, well.  That things are not the same for
> [Appellant], that things are improving for him, and
> that's a very positive sign.  But it seems that there
> have been some setbacks.  You know, the

---

[8] We note, as discussed at length above, Appellant's dispositional order sentencing him to DTA was amended following the Commonwealth's petition for re-disposition placing Appellant in the Mathom House juvenile facility after Appellant was denied admission into DTA.  Nevertheless, as Appellant's challenge is to the juvenile court's findings on the record regarding the least restrictive option being placement outside of the home, we are not precluded from reviewing Appellant's issue.

- 18 -

infractions for making noise in mass and not wearing his – wearing sneakers with his uniform can certainly be overlooked. But there's another troubling allegation that he was cited for bullying and teasing or some inappropriate conduct with a female student that, in and of itself, for a 13 year old probably could be overlooked, but given his history, and the sexual history for this adjudication of delinquency in this particular case, it gives the [juvenile c]ourt some added concern. But I don't think there's any question that [Appellant] has made progress. And, quite frankly, I think that he's got a very positive future ahead of him. He's a young man. And I think things will go well for him in the future. But I think something more than leaving him in the present situation without some more intensive type of therapy or counseling I think the [juvenile c]ourt would be remiss [to] do that.

And, again, it's very difficult for me to place any student, especially a young student like [Appellant]. The bottom line here is what is the best thing for him under the circumstances. And I feel, given my understanding of this program, the Diversified Treatment Alternative Program, that I feel that that is the best option for [Appellant]. Therefore, I'm going to adopt the recommendation of probation in this matter and I am not going to suspend that placement pending appeal in this matter.

…

[T]he [juvenile c]ourt finds that to allow [Appellant] to remain in the home would be contrary to the child's welfare and reasonable efforts have been made to prevent removal of the child from the home. This disposition is consistent with the protection of the public and best suited to the treatment, supervision, rehabilitation and welfare of the child.

…

- 19 -

> Okay, [Appellant], good luck to you. This is a good program. I think you're going to get a benefit out of it. And I think it's going to help you. You got a long way to go, you're 13, okay. You've got a long way to go, and we just want to make sure things get better for you and you keep improving.

N.T., 2/10/14, 14-15. The juvenile court thoroughly discussed its reasoning and conclusion for placing Appellant outside of the home. Accordingly, Appellant's final issue fails.

Based on the foregoing, we conclude that Appellant's issues are either waived or devoid of merit. Therefore, we affirm the juvenile court's February 10, 2014 dispositional order, and the juvenile court's subsequent April 23, 2014 order granting the Commonwealth's petition for re-disposition.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015