J-S09030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A.R.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.A.R.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 530 WDA 2022 |

Appeal from the Dispositional Order Entered April 11, 2022
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-JV-0000055-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: June 28, 2023**

S.A.R.C. appeals from the April 11, 2022 dispositional order committing her to secure placement at the Danville Center for Adolescent Females at Youth Development Center North Central Secure (the "Danville Center").  The order was entered after the juvenile court determined that S.A.R.C.'s initial placement at another, less restrictive facility should be modified.  We affirm.

By way of background, S.A.R.C. was adjudicated delinquent after admitting to acts that, if performed by an adult, would constitute unauthorized use of a motor vehicle.  Particularly, S.A.R.C. operated a blue Mazda without permission of the owner in the area of East 10th Street and Ash Street in Erie, Pennsylvania.  At the time of the acts, S.A.R.C. was residing with her father in Erie County.  In exchange for her admission, the Commonwealth withdrew additional allegations of receiving stolen property and theft by unlawful taking relating to the same vehicle.  Thereafter, the juvenile court committed

S.A.R.C. to New Outlook Academy, a residential facility located in Pittsburgh, Pennsylvania. The juvenile court also ordered that S.A.R.C. pay restitution in the amount of $1,796.43 plus court costs, perform community service, and participate in the drug and alcohol treatment program, if medically indicated.

S.A.R.C. failed to flourish during her stay at New Outlook Academy. In the span of approximately ten months, she accumulated fifty-seven negative behavior reports for rule infractions based upon medication misuse, school tardiness, harm to others, aggression, non-compliance, disruption, inappropriate peer interactions, disrespecting staff, bullying, and contraband. Further, she began engaging in grooming behavior toward a fourteen-year-old student at the center, despite being eighteen years old herself, compelling staff members to create and present to S.A.R.C. a written safety plan concerning that student. S.A.R.C. rejected the proposed safety plan by signing it "Kiss my Ass." Trial Court Opinion, 7/25/22, at 1 (citing N.T., 4/2/22, at 4). Out of concern for the safety of other students and staff, New Outlook Academy requested that S.A.R.C. be removed. Thereafter, a team of placement officers removed S.A.R.C. from the facility.

During an ensuing dispositional review hearing pursuant to Pa.R.J.C.P. 610(b)(4),[1] the Commonwealth recommended modification of S.A.R.C.'s initial placement and dispositional order so as to move her to a more secure

---

[1] This rule states that "[a] review hearing shall be held within twenty days of the discharge from the placement facility or request for change in the dispositional order." *Id*.

- 2 -

facility. S.A.R.C., the father of S.A.R.C., and Juvenile Probation Officer Alex Hromyak testified at the hearing. At its conclusion, the juvenile court determined on the record that S.A.R.C. should be placed at the Danville Center, located in Montour County, Pennsylvania. The juvenile court also articulated on the record the reasons for its disposition, together with the goals, terms, and conditions of that disposition. Significantly, the juvenile court found that S.A.R.C. had made minimal progress towards her goals relating to community protection and developing competencies to become a productive member of the community. *See* Dispositional Review Order, 4/11/22. The court determined that she made moderate progress toward her accountability goal. *Id*. The juvenile court entered a dispositional review order on April 11, 2022, memorializing S.A.R.C.'s new placement at the Danville Center. The dispositional review order articulated the findings of the juvenile court, including those related to community protection, accountability for offenses committed, and the development of S.A.R.C.'s competencies to become a productive member of the community. *See* Pa.R.J.C.P. 515(A).

This timely appeal followed.[2] S.A.R.C. and the juvenile court complied with Pa.R.A.P. 1925. In its Rule 1925(a) opinion, the juvenile court provided a thorough analysis addressing its decision for placement at the Danville

_____

[2] We note that S.A.R.C. did not pursue the expedited appeal process by filing a petition for specialized review of the out-of-home placement pursuant to Pa.R.A.P. 1612.

Center, including the rationale for the decision and citation to portions of the record supporting the placement.

S.A.R.C. presents two inter-related claims on appeal:

I.    Whether the trial court erred when it determined that Appellant needed further "treatment, rehabilitation and/or supervision" in a more restrictive facility instead of in a less restrictive setting such as a community type of setting (i.e., formal probation with outpatient and/or wrap around services) and/or an independent living type of placement due to Appellant's age and/or other factors considered by the Trial Court.

II.   Whether the trial court erred when it determined that Appellant's best placement option was Center for Adolescent Females (located in Danville, Pennsylvania), which is further from the Juvenile's home county than other placements that could accomplish the same "treatment, supervision and rehabilitation" goals that focus on education and/or personal safety instead of a less restrictive setting such as a community type setting (i.e., formal probation with outpatient and/or wrap around services) and/or an independent living type of placement due to Appellant['s] age and/or other factors considered by the Trial Court.

S.A.R.C.'s brief at 5.[3]

This Court reviews a juvenile court's dispositional order directing out-of-home placement for an abuse of discretion. *See Interest of D.W.*, 220

_____

[3] S.A.R.C. discusses both of these issues in a single argument section of her brief and, more importantly, fails to cite any legal authority to support her argument, in violation of Pa.R.A.P. 2119(a) (stating that each argument section shall be "followed by such discussion and citation of authorities as are deemed pertinent"). *See also In re C.R.*, 113 A.3d 328, 336 (Pa.Super. 2015) (holding that where a brief fails to cite to any legal authority, a reviewing court will not consider the argument). While we would normally find S.A.R.C.'s issues to be waived because of these violations, we decline to do so here based on the importance of the issues raised. Nonetheless, counsel for S.A.R.C. is cautioned to comply with the Pennsylvania Rules of Appellate Procedure in the future.

A.3d 573, 576 (Pa.Super. 2019). It is well settled that "under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." ***Id***. (cleaned up). Further, "in a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder." ***Commonwealth v. K.M.-F.***, 117 A.3d 346, 351 (Pa.Super. 2015) (cleaned up).

When a court commits a juvenile to out-of-home placement, the court is required to state the following on the record in open court:

> the name of the specific facility or type of facility to which the child will be committed and its findings and conclusions of law that form the basis of its decision consistent with subsection (a) and section 6301, including the reasons why commitment to that type or type of facility was determined to be the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare.

42 Pa.C.S. § 6352(c).

Similarly, Pa.R.J.C.P. 512(D)(4) enumerates the considerations that a juvenile court must address in its dispositional findings of fact and conclusions of law when the juvenile is removed from the home. In pertinent part, Rule 512 provides:

> The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515. On the record in open court, the court shall state:
>
> . . . .

- 5 -

(4) if the juvenile is removed from the home:

> (a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile;

> (b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of–home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare; and

> (c) the provision of educational services for the juvenile pursuant to Rule 148[.]

Pa.R.J.C.P. 512(D).

In its Rule 1925(a) opinion addressing S.A.R.C.'s first issue, the juvenile court identified the location in the record wherein it explained to S.A.R.C. and her father, at length in open court, why placement at the Danville Center was the least restrictive placement necessary and was best suited to S.A.R.C.'s treatment, supervision, rehabilitation, and welfare. *See* Juvenile Court Opinion, 7/25/22, at 5-8. The juvenile court also addressed S.A.R.C.'s arguments that she should have been entitled to less restrictive supervision due to her age and satisfaction of the court-imposed financial obligations and community service requirement. *See id*. at 10-11. Importantly, it found that S.A.R.C.'s age did not bear on this particular analysis because the court retains jurisdiction of a delinquent child until age twenty-one, and that despite completing her community service hours and paying restitution, "there is a long path ahead o[f] recognition and recovery before probation with

restrictions or an independent-living placement is best suited for [S.A.R.C.]'s treatment, supervision, rehabilitation, and welfare." *Id*.

As it relates to the juvenile court's balancing of the Rule 515(a) factors pertaining to community protection, accountability, and the development of skills that allow juveniles to contribute to the community, the juvenile court reasoned as follows:

> [A] secure setting, such as Danville, is the least restrictive environment to achieve the goals of community protection and competency by supplying sufficient manpower to enforce boundaries and by providing [S.A.R.C.] with the appropriate therapeutic tools and evidence-based programs to manage her behavioral issues. New Outlook Academy's failed attempts (albeit not for a lack of trying) to separate [S.A.R.C.] from other students, whom she was reportedly grooming for inappropriate romantic relationships, makes manifest the need for a more secure setting where separation can be effectively enforced for the students' own safety. Relatedly, such a setting will provide [the juvenile] with better treatment options to deal with the underlying trauma fueling her inappropriate actions, and healthier ways to deal with her attention-seeking behavior.

*Id*. at 7-8 (citations omitted).

Additionally, the juvenile court iterated that New Outlook Academy lacked the resources to provide constructive accountability for S.A.R.C.'s delinquent conduct, which was evidenced by the fact that S.A.R.C. continually engaged in inappropriate interactions with students and staff, despite warnings to stop. *See id*. at 8. The juvenile court determined that S.A.R.C.'s behavior warranted placement in a facility with increased structure and supervision, and that neither independent living nor the imposition of probation with restrictions would advance her accountability or adequately

- 7 -

protect the community. ***See id***. at 9. The court reasoned, "in neither setting would [S.A.R.C.] be assured to receive the substantial and focused counseling and therapeutic treatment she needs in order to heal the trauma ultimately at the root of this concerning behavior." ***Id***. As the certified record supports the juvenile court's rationale, we do not discern an abuse of discretion.

S.A.R.C.'s second assertion relates to the location of the Danville Center. She contends that placement at the Danville Center was inappropriate because it was farther from her home than other facilities that could provide the same supervision and treatment. She also argues that placement at the Danville Center constitutes a hardship due to its location, regardless of the existence of closer facilities. Preliminarily, we observe that S.A.R.C. did not assert this particular issue regarding the location of the Danville Center in her court-ordered Pa.R.A.P. 1925(b) statement. Accordingly, the juvenile court did not have the opportunity to address this argument, and we could consider it to be waived on that basis. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in a court-ordered Rule 1925(b) statement are waived).

Moreover, even in declining to find waiver pursuant to Rule 1925(b), we observe that S.A.R.C. failed to develop these location-based arguments in her brief. The section of the brief discussing this issue provides, in full, that

> [S.A.R.C.] avers and believes that an immediate release from Danville YDC to either formal probation with a combination of . . . outpatient services and/or release to an independent living type of placement would provide the necessary treatment, supervision and rehabilitation needed for [S.A.R.C.]'s case and **that said placement is closer geographically and allows the**

> **possibility that their family may visit more often during the time of [S.A.R.C.'s] placement**.

S.A.R.C.'s brief at 10 (emphasis added).  Critically, S.A.R.C. failed to identify a single facility that could provide the same services as the Danville Center. She also neglected to state the distance her family must travel to visit her at the Danville Center, point to any evidence supporting her supposition that the frequency of family visits may decrease if the transfer is upheld, or cite any caselaw for the ostensible proposition that increased travel militates against a juvenile court's decision to transfer a juvenile to a more secured facility.  As S.A.R.C. failed to develop her argument or provide citation to any pertinent legal authority, she did not present this Court with a basis to disturb the juvenile court's determination for that reason.  **See In re C.R.**, 113 A.3d 328, 336 (Pa.Super. 2015) (stating that "[t]his Court will not consider an argument where an appellant fails to cite to any legal authority or otherwise develop the issue").

To the extent that S.A.R.C.'s brief can be construed as challenging the juvenile court's finding that placement at the Danville Center was the least restrictive placement and best suited to S.A.R.C.'s treatment, supervision, rehabilitation, and welfare, the certified record belies this assertion.  As we previously discussed, the juvenile court determined that the Danville Center was the least restrictive environment to serve S.A.R.C.'s welfare and provide community protection.  Crucially, the juvenile court highlighted that the Danville Center offers therapeutic programs to help S.A.R.C. manage her behavior, and more importantly, treat the underlying trauma that drives her

negative behaviors. In this vein, the juvenile court found that neither independent living nor probation was appropriate for S.A.R.C because neither provided the required counseling and therapy.

As to the protection component of the court's analysis, the Danville facility has adequate personnel to maintain appropriate boundaries between S.A.R.C. and her peers, and to hold S.A.R.C. accountable for her behavior. Hence, the juvenile court's disposition treats the very issue that triggered the need to transfer S.A.R.C. to a more secured facility. Phrased differently, in contrast to the relative license that S.A.R.C. abused at New Outlook Academy, she will benefit from a highly structured regimen at the Danville Center.

In conclusion, the juvenile court fashioned a revised disposition to address S.A.R.C.'s rehabilitative needs and her potential for treatment, while balancing the protection of the community and the need to impose accountability for her delinquent acts. *See* 42 Pa.C.S. § 6352(a); *see also Interest of D.W.*, *supra*, at 580-81 (juvenile court did not abuse its discretion by imposing an out-of-home placement where the record was clear that juvenile's treatment and supervision needs could not be satisfied at home). As the certified record supports the juvenile court's findings, we find no abuse of discretion in its decision to place S.A.R.C. at the Danville Center.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2023