J-S38027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: Z.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: Z.R., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2903 EDA 2022 |

Appeal from the Dispositional Order Entered October 27, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-JV-0001370-2021

BEFORE:    LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:              **FILED DECEMBER 19, 2023**

Z.R., a minor, appeals from the dispositional order entered in the Court of Common Pleas of Philadelphia County, Juvenile Division, following her adjudication of delinquency for aggravated assault, criminal conspiracy, and robbery.[1]  Z.R. challenges the sufficiency of the evidence.  After careful review, we affirm.

Z.R.'s charges stem from an incident that occurred on the SEPTA subway between a group of teenage girls and group of teenage boys.  On November 17, 2021, the boys – all approximately 15 years old – were waiting at the subway platform when they were spotted by a group of at least four girls,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2702(a)(1) (aggravated assault); 18 Pa.C.S.A. § 903 (conspiracy); 18 Pa.C.S.S.A. § 3701(a) (robbery).

including Z.R.[2] One of the girls shouted, "that's them," in reference to what occurred the day before.[3] The boys moved to the other side of the platform to avoid confrontation, and the girls followed them. One of the girls grabbed a boy's backpack, but he managed to get away. The subway arrived, and the groups went into separate cars, and the subway departed.

Surveillance video then showed that the girls moved to the boys' car. They walked to where the boys were sitting, placed their coats and bookbags on empty seats, confronted the boys, and then and began punching the boys in the head. One of the girls stood on an adjacent seat and kicked the boys in the head. Z.R. was among the girls attacking the boys. The boys tried to cover their heads, but none fought back. When one of the boy's glasses fell, one of the assailants took them and broke them. Another teenage girl, C.L., witnessed the attack and tried to stop the assailants from beating up the boys.

The assailants then turned their ire on C.L. One assailant pushed C.L. against the subway door and slammed C.L.'s head into the window. When C.L. went down, the assailant and another girl repeatedly kicked C.L. in the head and beat her with a shoe. A third assailant – not Z.R. – demanded that

_____

[2] The boys were E.T., R.T., Y.J., and R.H.

[3] The day before, on November 16, the two groups got into a verbal altercation while on the subway. The boys testified that they were called Asian slurs. At one point, Z.R. poured her drink on one of the boys; the boy threw the cup back at her as she left the train. A cellphone video partially captured the scene. The boys were laughing. The events of November 16 are largely irrelevant except to explain the impetus for the next day's altercation.

C.L. give them her AirPods and went through C.L.'s pockets. Z.R. was not one of C.L.'s primary attackers. Initially, Z.R. stayed out of the fray, but then she moved toward C.L. The surveillance video shows her shoving a bystander aside. The whole incident lasted only a couple of minutes, essentially the time between subway stops. When the subway doors opened again, the assailants left the train, stepping over C.L., who was still on the ground. As Z.R. exited the car, she kicked back to strike C.L.

One of the boys had bruises on his face, a clump of his hair was pulled out, and his hearing was fuzzy. C.L. had to go to the hospital. She had a bruised lip, a black eye, and was given a neck brace.

Two days after the attack, Z.R. was arrested. After several months of preliminary proceedings, the juvenile court adjudicated Z.R. delinquent on July 21, 2022. Disposition was deferred for several more months, until October 27, 2022, when she was placed on probation.[4]

Z.R. timely filed this appeal and presents the following two issues for our review:

> 1. Was not the evidence insufficient to sustain a finding that Z.R. committed the offense of aggravated assault as a felony of the first degree against complainants E.T., R.T., and Y.J., where they did not suffer serious bodily injury and the prosecution failed to prove that either Z.R. or her co-conspirators agreed to or attempted to cause serious bodily injury?

---

[4] Evidently, Z.R. was also adjudicated dependent under the Juvenile Act and was placed at St. Joseph's Group Home. *See* T.C.O. at 2 (unpaginated).

2. Was not the evidence insufficient to sustain a finding that Z.R. committed aggravated assault or robbery against the complainant C.L., and the prosecution failed to prove that she entered into a conspiracy to do so?

Z.R.'s Brief at 3.

We begin by observing our standard of review when evaluating the sufficiency of the evidence supporting an adjudication of delinquency:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. […].
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*Interest of D.J.B.*, 230 A.3d 379, 388 (Pa. Super. 2020) (quoting *In re A.V.*, 48 A.3d, 1251, 1252-53 (Pa. Super. 2012)) (further citations omitted).

> As an appellate court, we must review the entire record...and all evidence actually received[.] [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

- 4 -

***D.J.B.***, 230 A.3d at 387 (quoting ***In re C.R.***, 113 A.3d 328, 333-34 (Pa. Super. 2015)) (further citations omitted).

Z.R.'s first appellate issue pertains to the attack on the boys. Z.R. does not challenge the juvenile court's determination that she conspired to attack them. ***See*** Z.R.'s Brief at 22. Instead, she presents a two-fold argument: first, the assault did not rise to the level of ***aggravated*** assault; second, even if her co-conspirators committed aggravated assault, that act was beyond the scope of the conspiracy.

Regarding Z.R.'s aggravated assault challenge, a juvenile may be adjudicated delinquent if she "(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2701(a). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***See*** 18 Pa.C.S.A. § 2301 (Definitions).[5] Aggravated assault also exists when it can be proven that the assailant ***attempted to cause*** serious bodily injury. "[A]n 'attempt' is found where an "accused who possess the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (citations

---

[5] By contrast, "bodily injury" is the "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

omitted). "An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances." *Id.* (citation omitted).

Z.R. argues that the boys did not suffer serious bodily injuries, and thus she could not be held liable for aggravated assault. At most, Z.R. argues, she committed simple assault. *Id.* at 12-13. Here, the boys suffered bumps and bruises, and one had a clump of his hair pulled out. Whether these injuries meet the definition of "serious bodily injury" is irrelevant. The juvenile court found Z.R. liable for the *attempt* to cause serious bodily injury:

> The evidence in this instant case overwhelming[ly] suggests that the co-conspirators acted in a manner which constituted a substantial or significant step toward perpetrating serious bodily injury upon another. The circumstances of the specific intent surrounding this incident are clear. Four girls surrounded the boys who were sitting on the subway. Together they continually beat and kicked three of the boys. These victims were not fighting back but the girls continued to beat them viciously and brutally. […] **They attempted to cause serious bodily injury to the victims**, did cause injuries to the victims and their actions demonstrated their extreme indifference to the value of human life.

Trial Court Opinion, dated 1/20/23 (T.C.O.), at 7 (unpaginated) (emphasis added).

Under the applicable standard of review, we must view the evidence in a light most favorable to the Commonwealth and draw all reasonable inferences therefrom. **D.J.B.**, 203 A.3d at 388. Importantly, the facts and circumstances need not be incompatible with the defendant's innocence. *Id.*

When reviewing the evidence in a light most favorable to the Commonwealth, the evidence is sufficient for a finding of aggravated assault. The girls followed the boys into the subway car; they took off their bookbags and coats to prepare for the assault; and then they repeatedly punched and kicked the boys in the head. The boys did not defend themselves other than trying to cover their bodies. Although Z.R. does not appear to be the primary assailant, she nevertheless participated in the attack. The juvenile court could have found Z.R. committed only simple assault but did not. Given our standard review, we discern no error.

Regarding Z.R.'s conspiracy challenge, "[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission [s]he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." **See** 18 Pa.C.S.A. § 903(a).

In order to prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the juvenile: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) shared a criminal intent and, (3) an overt act was done in furtherance of the conspiracy. **Commonwealth v. Chambers**, 188 A.3d 400, 409-10 (Pa. 2018) (citations omitted). Once the conspiracy is established beyond a

reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy." *Chambers*, 188 A.3d at 410.

The juvenile court articulated its conspiracy determination as follows:

> There is overwhelming evidence that a conspiracy existed. Z.R. was present with the group of girls at the subway platform when the boys arrived. The girls shouted "that's them" indicating that they were waiting for the boys. Once the boys entered the train, Z.R., along with three girls, entered the car where the boys were sitting. They immediately walked up to the boys. The video from SEPTA clearly shows that the girls removed their coats and bags and placed them on unoccupied seats on the train. The four girls then proceeded to brutally attack [the boys,] E.T., R.T., and Y.J.

T.C.O. at 6 (unpaginated)

Z.R. admits she conspired to assault the boys but argues that she cannot be found delinquent because she did not conspire to commit **aggravated** assault. Z.R.'s argument fails by its own terms. Our Supreme Court has explained:

> Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators […].

**See Commonwealth v. Fisher**, 80 A.3d 1186, 1192 (Pa. 2013) (citations omitted).

- 8 -

Assuming Z.R. and the other girls only conspired to commit simple assault – and setting aside the fact that Z.R. also physically attacked the boys – Z.R. would still be responsible for her co-conspirators' actions.  If we assume that "the common design or purpose of the conspiracy" was to commit simple assault, then the actions committed by Z.R.'s co-conspirators – the aggravated assault of the boys – are the "natural and probable consequences of acts…done in pursuance of the common design or purpose of the conspiracy."  **See Fisher**, 80 A.3d at 1192.  As such, Z.R. was equally responsible for her co-conspirators' aggravated assault of the boys.

For these reasons, we conclude there was sufficient evidence for the juvenile court to find Z.R. delinquent of aggravated assault and conspiracy.  Z.R.'s first appellate issue merits no relief.

Z.R.'s second appellate issue pertains to the attack on C.L., for which the juvenile court found her delinquent of conspiracy, aggravated assault, and robbery.  Recall that when C.L. interceded on the boys' behalf, two of the girls attacked C.L. During the attack, a third girl demanded C.L.'s AirPods, and when C.L. went down, the same girl went through C.L.'s pockets.

On appeal, Z.R. argues that she cannot be held responsible, because the co-conspirators' assault and robbery of C.L was beyond the scope of the conspiracy.  She argues further that she could not be responsible under the accomplice theory, because she took no steps to solicit or aid the other girls' assault and robbery of C.L.  As a preliminary matter, we note that Z.R. does not challenge the finding that C.L. was assaulted and robbed; Z.R. only

challenges whether she is responsible as a co-conspirator or otherwise culpable under the accomplice theory.

Again, for the conspiracy charge, the Commonwealth had to prove that Z.R. (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) shared a criminal intent and, (3) an overt act was done in furtherance of the conspiracy. **Chambers**, 188 A.3d at 409-10 (citations omitted). Moreover, Z.R. would also be responsible for the "natural and probable consequences" of acts taken in furtherance of the original conspiracy. **See Fisher**, 80 A.3d at 1192. Our Supreme Court recognized the difficulty of finding a conspiracy in situations like this. "Fights involving multiple participants, particularly those in which a person interjects herself into a brawl after it has commenced, present unique challenges for determining whether a conspiracy existed." **Chambers**, 188 A.3d at 411.

It is apparent that the group of girls, at least initially, did not conspire to attack C.L. Only when C.L. interceded on behalf of the boys did the girls turn their attention toward her. At that point, C.L. was assaulted and robbed. We must resolve whether there was sufficient evidence to support the juvenile court's finding that Z.R.: 1) entered an agreement to aid in the assault and robbery; 2) that she shared in the criminal intent; and 3) she took an overt act in furtherance of the conspiracy. **See Chambers**.

When reviewing the evidence in a light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, we conclude there was sufficient evidence to hold Z.R. accountable. The

- 10 -

surveillance video initially shows Z.R. was away from the other girls during their attack on C.L. Indeed, Z.R. cites this point in the video to argue that she tried to stop the attack, as evidenced by the fact that she can be seen pulling one of the other girls away. This argument is plausible, except that Z.R. then moved closer to C.L. so she could aid another assailant.[6] When Z.R. reached C.L., the footage shows a bystander was poised to intercede on C.L.'s behalf. Z.R. shoved that bystander back while the assault and robbery transpired. Additionally, Z.R. kicked C.L. as she exited the subway.[7] Thus, we may infer that Z.R. agreed to aid the robbery and assault of C.L., that she shared in the criminal intent, if only briefly, and that she took steps in furtherance of the attack and robbery. The juvenile court did not err when it held Z.R. responsible as a co-conspirator in the assault and robbery of the C.L.[8] Z.R.'s second appellate issue merits no relief.

_____

[6] We reiterate that the facts and circumstances need not be incompatible with Z.R.'s innocence. **See D.J.B.**, 230 A.3d at 387. Perhaps Z.R. did not initially agree to attack C.L. But after a while, Z.R. decided to participate rather than staying out of it. In any event, we note that it is the role of the juvenile court – not this Court – to weigh the evidence. **See id.**

[7] Contrary to Z.R.'s characterization, the footage does not indicate that Z.R. merely tripped over C.L., but that Z.R. actively kicked her.

[8] Even if we agreed with Z.R.'s position – that she was not a co-conspirator in the attack on C.L. – we would still conclude that Z.R. was accountable under the accomplice theory. "A person is legally accountable for the conduct of another person when: (3) [s]he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. § 306(b)(3). "A person is an accomplice of another person in the commission of an offense if: (1) with the intent or promoting or facilitating the commission of the offense, [s]he: (ii)
*(Footnote Continued Next Page)*

- 11 -

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2023

---

aids or agrees to attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306(c)(1)(ii). We disagree with Z.R.'s contention that she took no steps to facilitate the assault and robbery of C.L. As noted above, Z.R. shoved a bystander out of the way to ensure that the other girls in her group could attack C.L. unencumbered.